UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JAN 25 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-02-GWU

JULIA MANSBERRY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Mansberry

> Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Mansberry

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Although the plaintiff had alleged that she became disabled in May of 2000, the administrative law judge (ALJ) first determined that the plaintiff has performed substantial gainful activity between May, 2000 and July 31, 2001. (Tr. 17-18, 30). For the subsequent time frame, it was determined that the plaintiff suffered from a generalized anxiety disorder, a history of spastic coronary artery disease, hypertension under good control, obesity, a history of irritable bowel syndrome, gastroesophageal reflux disease, anemia, and a tiny central disc bulge at the C6-7 level (Tr. 18), the functional impairments from which limited her to a restricted range of light level work (Tr. 28). Although Mansberry could not perform any of her past relevant work, she could engage in significant numbers of alternative, light jobs in the economy and, thus, was not "under a disability." (Tr. 28-31).

The ALJ based his ultimate conclusion for the time frame after July, 2001 on responses to interrogatories provided by the vocational expert (VE). The VE

7

indicated that the plaintiff had a history of unskilled, light level work, a high school education and had no transferable skills. (Tr. 136-137). He was then asked to assume the existence of an individual with Mansberry's age, education and work history, who: (1) could lift up to 20 pounds frequently, sit for 2 to 4 hours continuously and up to 8 hours with rests, and stand and/or walk 1 to 2 hours continuously and up to 8 hours with rests, (2) could perform no more than occasional bending, squatting, crawling or climbing, (3) had mild limitations from exposure to marked changes in temperature and humidity and exposure to dust, fumes, and gases, (4) had "moderate" limitations from exposure to moving machinery and driving automobile equipment, and must avoid all heights, and (5) had the ability to understand and recall simple material, maintain the mental effort needed to complete tasks, function in an object-focused setting and was able to handle routine situations. (Tr. 137). The VE identified a number of jobs which fit this vocational profile. (Tr. 137-138). Faced with an alternative hypothetical question, the VE indicated that a "poor ability to deal with stress, maintain attention and concentration, understand, remember and carry out simple job instructions, and relate predictably in social situations" would render an individual disabled. (Tr. 138).

The plaintiff's major argument is that, in coming up with the aforesaid mental restrictions, the ALJ did not properly take into account the opinion of her treating psychologist, Dr. Cecilia Carpio-Carigaba. In the text of his decision, the ALJ had

8

indicated that there was a reason to discount the opinion from the treating source since the assessment was internally inconsistent (Tr. 19), and that he gave significant weight to Eggerman and the medical reviewers "whose opinions are both internally inconsistent [sic] and supported by the entirety of the objective record" (Tr. 21). Thus, a close analysis of the evidence of the plaintiff's mental status is in order.

The ALJ claims to have relied upon Kevin Eggerman's report. Eggerman's consultative examination occurred in November, 2001. (Tr. 241). At that point, the plaintiff had not yet resumed mental health treatment, which had ended some three years prior (Tr. 242) and would have been outside the relevant period. The plaintiff reported that she had some special education classes, but was able to do basic reading, writing, and arithmetic. (Tr. 243). Mansberry was described as punctual, cooperative, able to maintain good eye contact, and not having a depressed affect. (Tr. 245). Her IQ was estimated to be "low average" and he diagnosed moderate, chronic anxiety. (Id.). Her current GAF was assessed at 65 to 70 (Tr. 246), which was consistent with mild symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV). Eggerman ended his report by indicating that the plaintiff had a "fair" ability to relate to coworkers and supervisors, persist on task, and tolerate work-related stress in a routine eight-hour day. (Id.). Thus, the consultative examiner described specific limitations which were apparently at more than a minimal level and these specific limitations were not addressed to the VE; the

9

consultant's report does not itself, therefore, validate the first set of hypothetical restrictions given to the VE.

Neither did the ALJ cite the "moderate" specific limitations of the medical reviewers (Tr. 248-249, 353-354), but instead merely took commentary from that portion of their forms which merely <u>elaborated</u> on the specific limitations (Tr. 250, 355). It can not be said, then, that the full set of restrictions set out by the reviewers was cited to the VE. Moreover, no detailed discussions of the treating sources were made by the reviewers, so that these opinions, even if they had been fully cited, would not have properly rebutted an inconsistent opinion from a treating source. See <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994).

As far as the treating psychologist was concerned, it is clear that ALJ was at least incorrect in indicating that the plaintiff's treatment notes from that source showed some clear pattern of improvement. The plaintiff had resumed treatment in August, 2001 at the psychologist's facility, after an absence since 1998; she was described as having a depressed mood. (Tr. 296-297). In September, the plaintiff indicated that she was not "doing any better" and the psychologist observed that she was depressed and anxious. (Tr. 295). In October, the plaintiff was described as having physical symptoms (i.e., an episode of facial numbness and also chest pain) which could have been caused by anxiety and her mood was said to be dysphoric. (Tr. 294). In January, 2002, the plaintiff was described as still having "bad anxiety

10

Mansberry

attacks" and not being able to sleep. (Tr. 292). Her affect was described as constricted and anxious in March. (Tr. 475).[1] In April, she described herself as "not doing too good" and the psychologist observed a depressed mood and constricted affect. (Tr. 474). The same observation by the psychologist was made in May. (Tr. 472, 473). Although the patient reported sleeping better in late July, her mood was anxious and affect was constricted. (Tr. 470). The plaintiff's affect was constricted and her mood was depressed again at a September office visit. (Tr. 468). In October, the plaintiff described herself as doing "a little better" but still not sleeping well, and her mood was still observed to be depressed and her affect constricted. (Tr. 467). In March, the patient reported mood swings and periods of feeling sorry for herself; she was described as being "very anxious looking." (Tr. 465). In April and June, observations were made about her depressed mood and constricted affect. (Tr. 464). In July, the examiner completed an assessment form indicating that the plaintiff had a number of "seriously limited but not precluded" abilities. (Tr. 459-

---

[1] It is noteworthy that another treating source diagnosed anxiety and/or depression during roughly the same time frame (Tr. 302-307, 409), as did some other physicians at an earlier time (e.g., Tr. 150).

Mansberry

460).[2] Thus, at least a portion of the ALJ's reasoning for rejecting the treating source's opinion was patently invalid.

As the plaintiff has not specifically raised an argument about the ALJ's finding of "substantial gainful employment" prior to August, 2001, this portion of the administrative decision is affirmed. As for the decision on the subsequent period, the case must be remanded for further consideration of the vocational impact of the plaintiff's mental restrictions.[3]

This the _25_ day of January, 2006.

*signature*

G. WIX UNTHANK
SENIOR JUDGE

---

[2]In September, 2003, a consultative examiner described Mansberry as reserved and appearing to be depressed. (Tr.478). He also commented that her biggest problem was probably her intellectual functioning, since she had a very poor understanding of her medical conditions. (Tr. 479).

[3]The Court does find some merit in the rejection of the physical capacity opinions of Dr. William Durham (Tr. 306) and Marc Acob (Tr. 359). Acob's remark about how the plaintiff's physical conditions "may" limit Mansberry from maintaining a job (Tr. 359) would seem to be somewhat equivocal. Durham's prescription pad disability statement (Tr. 306) would have been assisted by specific references to diagnoses in his progress notes. At any rate, reliance on these two opinions currently is a less persuasive argument that the plaintiff's argument about the mental restrictions.